**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

-against-                                                     1:20-CR-00585 (ALC)

RONALD ROMANO,

Defendant.

<u>**SENTENCING MEMORANDUM ON BEHALF OF RONALD ROMANO**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT..............................................................................................................................6

        I.      THE ADVISORY GUIDELINES RANGE..................................................7

                A.     The Guidelines Contemplate a Sentence of Time Served ...............7

                B.     There Has Been Adequate Deterrence ............................................9

                C.     There is No Risk of Recidivism.......................................................11

                D.     Mr. Romano has Suffered Financial Penalties...............................12

CONCLUSION...........................................................................................................................13

## TABLE OF EXHIBITS

**A.  Character Letters by Exhibit No.**

1.      Ltr. from Lisa Romano, dated August 27, 2022

2.      Ltr. from Nicholas Romano, dated August 29, 2022

3.      Ltr. from Samantha Romano, dated August 28, 2022

4.      Ltr. from Victoria Romano, dated August 29, 2022

5.      Ltr. from John Romano, dated August 26, 2022

6.      Ltr. from Gerard Iucci, Jr., dated August 21, 2022

7.      Ltr. from Jeff LaPollo, dated August 29, 2022

8.      Ltr. from Victor Zazzu, dated August 27, 2022

9.      Ltr. from Angelo Del Giudice, dated August 27, 2022

10.     Ltr. from Michael Conforth, dated August 30, 2022

11.     Ltr. from Robert Morea, dated August 28, 2022

12.     Ltr. from James Jeffreys, dated August 27, 2022

13.     Ltr. from Joseph Spitalieri

14.     Ltr. from Daniel Carrai, dated August 29, 2022

15.     Ltr. from Peter Bozzo, dated August 29, 2022

16.     Ltr. from William Molitor, dated August 29, 2022

# TABLE OF AUTHORITIES

**Cases**

*Dean v. United States*, 137 S. Ct. 1170 (2017) ................................................................ 7

*Gall v. United States*, 552 U.S. 38 (2007) .................................................................... 7, 9

*Kimbrough v. United States*, 552 U.S. 85 (2007) ........................................................... 8

*Rita v. United States*, 551 U.S. 338 (2007) .................................................................... 9

*Simon v. United States*, 361 F. Supp. 2d 35 (E.D.N.Y. 2005) ..................................... 11

*United States v. Booker*, 543 U.S. 220 (2004) ............................................................... 7

*United States v. Corsey*, 723 F.3d 366 (2d Cir. 2013) ................................................... 7

*United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017) ................................................. 11

*United States v. Johnson*, 567 F.3d 40 (2d Cir. 2009) ................................................... 7

*United States v. Leitch*, 2013 WL 753445 (E.D.N.Y. Feb. 28, 2013) .......................... 12

*United States v. Sehgal*, 480 F. App'x 16 (2d Cir. 2012) ............................................... 8

*United States v. Sloane*, 308 F.R.D. 85 (E.D.N.Y. 2015) ............................................ 11

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) .................................................. 10

*United States v. Stowe*, 375 F. Supp. 3d 276 (E.D.N.Y. 2019) .................................... 11

**Statutes**

18 U.S.C. § 3553(a) .................................................................................................. passim

U.S.S.G. § 5E1.2(d)(3) ................................................................................................... 13

**Other Authorities**

United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines*, at p. 28 (2004) .................................. 11

Defendant Ronald Romano, by and through his counsel, respectfully submits this memorandum ("Sentencing Memorandum"), as well as the accompanying exhibits, in connection with the sentencing hearing scheduled for September 15, 2022 at 3:30 p.m.

## PRELIMINARY STATEMENT

Mr. Romano is a good, decent, and honorable man who has spent his life working hard for his family. Regarding the instant offense, Mr. Romano has learned his lesson and will never violate the law again. As noted by the letters submitted in support of Mr. Romano, he has earned the respect and love of his friends, family, and community. For example:

- Lisa Romano, Mr. Romano's wife of over 35 years, describing Mr. Romano's devotion to his family and their marriage, explained: he is "a dedicated father and husband" who "has been a very supportive, generous and involved father from day one," further and regarding his parents, Mr. Romano's dedication to his mother and his father while he suffered from Parkinson's "showed me what kind of man and son" he is. Ex. 1 (Lisa Romano Ltr.).

- Nicholas Romano, Mr. Romano's son, expressing Mr. Romano's commitment to both hard work and family, noted: "He is the person that would travel almost 3 hours to and from Harrisburg, Pennsylvania each way in years past, whilst first dropping my grandmother off at the Veterans assisted-living home in the morning to visit my now deceased granther who[] was suffering from Parkinson's Disease, then go to the used car auction and work a full day, to then come all the way back and pick her up to bring her home." Ex. 2 (Nicholas Romano Ltr.).

- Samantha Romano, Mr. Romano's elder daughter, described her father as a role model, observing: "Providing for his family was always his top priority," showing "up every single day as the best father and provider to his family" and that "[e]ven amidst these very difficult two year, my dad is always concerned about us over himself." Ex. 3 (Samantha Romano Ltr.).

- Victoria Romano, Mr. Romano's younger daughter, explaining how important her father was and is in her life, wrote: "I still very much need my father's guidance in life. He is someone my mom, siblings, and I rely on. He is the best dad, husband, and friend out there and I need him in my life." Ex. 4 (Victoria Romano Ltr.).

- John Romano, Mr. Romano's brother, explaining his personal and professional experience with Mr. Romano, observed: "My brother is a business man that I know to be honest and ethical, and always acts in the interest of his family with his goal

1

of earning a living and paying the bills." Ex. 5 (John Romano Ltr.).

- Peter Bozzo, Mr. Romano's friend and the parent of a now adult child Mr. Romano coached, commenting on Mr. Romano's generosity and community support, observed that as a volunteer coach Mr. Romano had the desire to "instill" in the players "the qualities that can be learned on the baseball field—teamwork, effort, dealing with adversity, humility, and perseverance." Mr. Romano worked "with the other players on the team to make them both great players and great men. Ron keeps in touch with some of his players to this day." Ex. 7 (Peter Bozzo Ltr.).

- Robert Morea, a friend and owner of an equipment finance company, noting Mr. Romano's charity, wrote: "Ronald Romano has always been an upright character especially when it comes to giving. He has given countless strangers and friends jobs and opportunities with many second chances." Ex. 12 (Robert Morea Ltr.).

- Jeff LaPollo, a former player on youth baseball teams Mr. Romano coached and current financial advisor, providing his views of Mr. Romano's character said: "Ron served as my baseball coach for close to 10 years and…was an extremely important part of my upbringing because baseball wasn't just a sport we were playing it was a foundation of hard work, respect for others and appreciation for everything [] that we do." Mr. LaPollo continued: "I learned a lot from Ron because he managed his players by speaking to them with respect and keeping things light with a joke and smile. To this day I believe that those days shaped the person I am today and my willingness to want to help others learn and grow." Ex. 6 (Jeff LaPollo Ltr.).

On May 31, 2022, Mr. Romano pled guilty to misdemeanor Count 3 of the Indictment 20-CR-00585 (ALC) pursuant to a plea agreement with the government. The advisory Sentencing Guidelines ("Guidelines") call for a term of imprisonment of 0 to 6 months. As the Court is aware, Mr. Romano has been on bail with several conditions for 27 months, since the day of his arrest in this case on May 26, 2020. During his more than two years of pre-trial release, Mr. Romano has complied with every obligation of his release, and has had no issues reported against him.

We respectfully submit, for several reasons, that the Court should impose a sentence of time served with no additional time of supervised release. Mr. Romano is nearly 61 years' old and has led a law-abiding life. He is devoted to his family and community, and has financially been devastated by the COVID-19 pandemic and the instant offense. In addition, Mr. Romano has been under court supervision, without incident, for 27 months and has pled to a misdemeanor. While

extremely serious, such a disposition when aligned with the facts of this case requires no further punishment.  Finally, as a direct result of Mr. Romano's arrest in this case, the State of New Jersey has brought tax charges against him in relation to his business, so he faces additional charges and potential financial penalties from the New Jersey case.   Probation similarly recommends no custodial sentence, although the probation officer recommends a sentence of three years' probation and a $5,000 fine.  If such a sentence were imposed by the Court, the resulting punishment would be over five years of court supervision for a misdemeanor for a defendant with no criminal history. Such a punishment, in Mr. Romano's view, does not take into consideration the disposition, the amount of time already spent on pre-trial supervision, nor the devastating financial and personal hardship Mr. Romano has endured since the COVID-19 pandemic started.  In addition, imposing a fine would do nothing to deter or otherwise punish Mr. Romano more than he has already been punished and deterred, but rather would further impede his ability to once again be a productive member of his community and support his family.  These reasons support a sentence of time served without imposition of a fine, a sentence that is sufficient, but not greater than necessary, to comply with the purposes of the law.

## BACKGROUND[1]

Mr. Romano is a 60-year-old self-made businessman. Most importantly to Mr. Romano, he is a father of three, and has been married to his wife Lisa for almost thirty-six years.  PSR Rep. ¶¶ 121-122.  His proudest accomplishment is raising children who have an entrepreneurial spirit, value hard work and education and still enjoy spending time with their parents.  Mr. Romano is a dedicated family man.  He was passionately involved in his children's lives as they grew up, continuing to today as they embark on careers in law enforcement and opening and running a small

---

[1] Citations to the Presentence Investigation Report (Dkt. 66) are indicated throughout as "PSR Rep.",

business.  *Id.* ¶ 122.

Mr. Romano's eldest son, Nicholas, is a Port Authority police officer in Newark, New Jersey.  *Id*.  Nicholas played varsity baseball at Ramapo College, and earned a degree in Biology. Mr. Romano's eldest daughter, Samantha, runs a small business in Manalapan, New Jersey called California Cold, an innovative and inviting coffee shop.  *Id*.  She is also a graduate of Ramapo College.  Mr. Romano's younger daughter, Victoria, graduated this past December, completing her undergraduate business degree at Rutgers while working part-time with Samantha at California Cold.  *Id*.  She is working towards becoming a partner in the business. As the attached letters of support make plain, as Mr. Romano has always prioritized his family and community above everything else.

Mr. Romano's Catholic faith has guided his actions throughout his life.  For over thirty years, he has been an active member of Saint Thomas More parish in Manalapan, New Jersey.  Mr. Romano can often be found helping the parish by volunteering for charitable events and fundraising in his community.  *Id*. ¶ 126.  He learned the value of giving back to your community from his parents.  His father, Louis, was a Korean War veteran with the U.S. Army artillery.  Louis suffered from Parkinson's disease and passed away in 2015.  *Id*. ¶ 119.  Mr. Romano's mother, Catherine, is eighty-nine years old and lives in an assisted living facility near Mr. Romano.  *Id*.

Over the years, Mr. Romano embraced the entrepreneurial spirit. He began his first business selling cars with his brother John in 1977 in their neighborhood in Brooklyn.  He and John sold that first lot on 65th Street in Brooklyn to a Ford dealership.  His primary business has always been selling cars, buses and vans.  After working for companies in New York and New Jersey for several years, in 2006, Mr. Romano was able to start his own businesses, Roman Chariot Bus & Van Sales and Roman Chariot Auto Sales, LLC.  *Id*. ¶ 144.  In this industry, Mr. Romano was able to develop the first American-made double-decker bus, improving the safety and

emissions that had prevented U.K. double-deckers from operating here.  He has worked with New York City, specifically the Department of the Aging and NYC Health and Hospitals to provide transportation services to the elderly and infirm in hospitals and nursing homes.  *Id.*  Mr. Romano is proud of his work in the service of others.

As a self-made and self-employed businessman, Mr. Romano was not prepared for the devastating impact the COVID-19 pandemic would have on his livelihood and when the immediate impact was felt, he panicked.  As the pandemic became a national emergency, Mr. Romano unfortunately took advantage of the situation.  He was in a unique position to do so because he had previously worked with the City of New York.  He worked with others to submit proposals to the City at a time when the City was in need of a reliable supply of masks and other PPE.  *Id*. ¶¶ 61-65.  It was Mr. Romano's belief that he could secure contracts with the City because the review process by which proposals and suppliers are evaluated was temporarily suspended.  *Id*. ¶ 69.  As a result of his actions, two Formal Proposals for N95 masks were submitted to New York City.  *Id*. ¶¶ 60, 64.  A third Formal Proposal was submitted to the Florida Department of Emergency Management.  *Id*. ¶ 77.  Mr. Romano regrettably believed that the ends would justify the means if he did in fact supply masks to city and state governments.

He submitted proposals with prices that were much higher than market rate.  *Id*. ¶ 66.  Pricing decisions for many companies manufacturing and selling masks and other PPE were exceedingly complex during this health and economic crisis, and Mr. Romano did not have experience in this space at the time.  This is offered, not as an excuse, but as an explanation for his conduct.  He now understands how wrong the conduct he engaged in was—indeed it was criminal.  Mr. Romano never sold these masks and no money ever changed hands and thus he is grateful the harm was limited to the conduct described above and in further detail in the Presentence

Investigation Report ("PSR").

Mr. Romano deeply regrets his actions and the poor decisions he made between late February and early April 2020.  Mr. Romano feels deep disappointment and embarrassment that he violated the law and attempted to take advantage of the panic associated with the pandemic. Mr. Romano will never violate the law again.  He has learned his lesson.

## ARGUMENT

The Court should order a sentence of time served. The Guidelines range, which includes the possibility of no term of imprisonment or additional supervised release, is stipulated by the government as Mr. Romano clearly demonstrated acceptance of responsibility through his allocution and subsequent conduct prior to sentencing. A sentence of incarceration would meaningfully overstate the seriousness of the offense and should be significantly discounted when considering an appropriate sentence.  Furthermore, Probation's recommended term of three years of probation would be greater than necessary to accomplish the goals of sentencing, subjecting Mr. Romano to court-authorized supervision for *over five years*.  If anything, should the Court determine that additional supervision is required, a one year term of supervised release is sufficient to provide additional and significant punishment.  As noted in the PSR, Mr. Romano is just starting to re-build his business and has additional criminal tax proceedings on-going in New Jersey.  He faces an uphill battle to get back at least some portion of the life he had before COVID-19. Imposing a significant term of probation does nothing to deter or otherwise accomplish the goals of sentencing, but makes Mr. Romano's road back that much more difficult, if not impossible.

Moreover,  Mr. Romano's family depend on Mr. Romano for financial, emotional, and physical support during this difficult time as the country comes out of the pandemic and Mr. Romano tries to re-build his business. In light of the extremely positive life that Mr. Romano has lived, his lack of criminal history, and his conduct in the instant case: taking responsibility for his

actions and behaving as a model citizen while on pre-trial supervision, the Court should impose a sentence of time served with no additional court-monitored supervision.  PSR Rep. ¶¶ 171-172.

## I.    THE ADVISORY GUIDELINES RANGE

As the Court is well aware, the Guidelines serve as a "starting point" and an "initial benchmark," but a "court may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *United States v. Corsey*, 723 F.3d 366, 379 (2d Cir. 2013). Indeed, the Guidelines are one of several factors a court must consider in its "individualized assessment" of the appropriate sentence based on the facts presented and § 3553(a) factors. *Gall*, 552 U.S. at 49–50; *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009). The four permissible goals of sentencing are "just punishment, deterrence, the protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017).

The mandate of Section 3553(a) is for the Court to "impose a sentence sufficient, but not greater than necessary," to vindicate these four purposes of sentencing. 18 U.S.C. § 3553(a). The Guidelines offense level calculated in the plea agreement and the PSR is flexible.  This offense level does not require a sentence of imprisonment, nor does it require a term of probation.  These decisions are left to the Court's discretion.   In light of Mr. Romano's background and characteristics, as well as the unique circumstances of the offense, including its brief duration, it is respectfully submitted that any sentence higher than time served would be sufficient, but not greater than necessary to fulfill the purposes of sentencing. Moreover, when applied to the facts of this case and the background of Mr. Romano, the Section 3553(a) factors counsel in favor of a non-custodial sentence, if the Court determines any term is required, of not more than one year.

### A.  The Guidelines Contemplate a Sentence of Time Served

The federal sentencing statute "permits the court to tailor the sentence in light of § 3553(a) concerns." *United States v. Booker*, 543 U.S. 220, 245–46 (2004); *Kimbrough v. United States*,

-7-

552 U.S. 85, 101 (2007) ("The [sentencing] statute, as modified by Booker, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing . . ."). Under § 3553(a), courts must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed" to "reflect the seriousness of the offense." 18 U.S.C. § 3553(a). It must then "afford adequate deterrence to criminal conduct" in light of "the kinds of sentences available." *Id.* A sentence of time-served without probation is both contemplated and acceptable. *See United States v. Sehgal*, 480 F. App'x 16, 22 (2d Cir. 2012) ("[Defendant's] argument for a sentence without a term of imprisonment, probation, or supervised release was consistent with her Guidelines range"). Here, as discussed herein, adequate deterrence has already been achieved and the nature, circumstances, and seriousness of the offense warrant a within-Guidelines sentence of time served. 18 U.S.C. § 3553(a)(1), (2)(A) & (B).

The first factor instructs the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). At the outset, the nature and circumstances of the offense do not align with Mr. Romano's personal history and character. Near the beginning of the COVID-19 pandemic, and almost immediately after New York and New Jersey went into lockdown following the proliferation of cases in this area, Mr. Romano's business was effectively shut down and his financial livelihood was put in jeopardy. PSR Rep. p.37. He did not have a way to continue to support his family after he was forced to temporarily close his business and surrender all vehicles subject to bank interest, suffering a significant loss.[2] Mr. Romano wrongly believed that the ends would justify the means if he could secure a reliable supply

---

[2] There is one inaccuracy in the PSR with respect to Mr. Romano's inventory. It is not that the Mr. Romano "was unable to meet monthly payments and lenders sought out the cars in his inventory" (see PSR Rep. ¶ 144), but rather the lending banks called in notes and Mr. Romano was forced to pay the these banks the difference after the inventory was sold at a significant loss.

of N95 masks to sell.  These attempts included the submission of two Formal Quotes to the New York City and one submission to the Florida Department of Emergency Management over the course of approximately one month.  *Id.* ¶¶ 60, 64, 77.  Thankfully, however, no submission resulted in the exchange of personal protective equipment for payment, let alone at above-market rates.  Hence, while the conduct here is serious, the nature and circumstances of the offense counsel in favor of a within-Guidelines sentence of time served.

The applicable guidelines provisions provide the Court may impose a term of supervised release of up to one year or a term of probation of up to three years.  *Id*. p.36.  Mr. Romano has already abided by all terms of probation for over 27 months.  Though Probation recommends additional probation of three years, such a sentence would be greater than necessary and in fact, when combined with pre-sentencing probation, would exceed the statutory period of probation of up to five years.  For over two years Mr. Romano has faced the consequences of his actions and has accepted and strictly abided by all terms of this significant punishment.  *Gall,* 552 U.S. at 48 ("Offenders on probation are [] subject to several standard conditions that substantially restrict their liberty").  This is a sufficient term calculated to achieve the aims of sentencing.  However, if the Court believes that an additional term of supervision is required, Mr. Romano should be sentenced to one year of supervised released, a term which does not exceed the statutory provisions.

As explained in further detail below, all of the mitigating factors point towards a sentence of time served, a sentence that is "'sufficient, but not greater than necessary, to comply with' the basic aims of sentencing." *Rita v. United States*, 551 U.S. 338, 348 (2007) (quoting 18 U.S.C. § 3553(a)).

### B.  There Has Been Adequate Deterrence

Given   the cumulative impact of the factors set forth below, the goal of "adequate

deterrence" has been achieved.  18 U.S.C. § 3553(a)(2)(A) & (B).

First, the high-profile arrest and investigation of Mr. Romano's role in the attempt to sell masks during the COVID-19 pandemic, and subsequent indictment have promoted both general and specific deterrence and protect the public from future similar offenses.  Indeed, Mr. Romano's conduct has been singled out in headlines around the world as an example of the full force and effect of the Defense Production Act.  Significantly, the State of New Jersey told Mr. Romano's counsel in his tax case that the reason they started investigating Mr. Romano's business in New Jersey was because they read in newspapers about the instant case.

As the PSR and numerous letters submitted to this Court describe, Mr. Romano and his family have endured much difficulty over the past years, both personally and as related to Mr. Romano's business.  (*See* Ex. 1, Lisa Romano Ltr.; Ex. 3, Samantha Romano Ltr.; Ex.5 John Romano Ltr.).  Specifically, these charges  have been especially difficult for Mr. Romano's son, as a valued member of law enforcement, who was investigated for potential conspiratorial conduct as well as ridiculed by his colleagues in the Port Authority police force following Mr. Romano's arrest.  Mr. Romano deeply regrets that his conduct has made his children's lives more difficult and he would never do anything to jeopardize his children's reputations or their livelihood again.

Further, Mr. Romano's ability to rebuild his business is in jeopardy.  He is aware that the New Jersey license required to sell used vehicles have mandatory disclosure provisions related to any arrest and/or convictions.  Thus, he cannot guarantee he will be able to secure the appropriate license to continue to operate his business.  Further, because of similar requirements he did not attempt to renew his banking license, which is required to finance vehicles for customers, while on probation for the past two years.  Such a consequence serves sufficiently deters him from reoffending and will send a strong message to others. *See United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) ("It is difficult to see how a court can properly calibrate a 'just punishment' if

it does not consider the collateral effects of a particular sentence."  A term of incarceration and/or a continued period of probation is unnecessary, unwarranted and has no just punitive purpose.

### C.  There is No Risk of Recidivism

The Court can be assured from Mr. Romano's past behavior, as well as his behavior during the pendency of this case, that Mr. Romano will never violate the law again. Mr. Romano is a 60-year-old, first-time offender who has accepted full responsibility for his crime and deeply regrets his involvement in this offense.  His age alone counsels in favor of a noncustodial sentence.  *See United States v. Sloane*, 308 F.R.D. 85, 88 (E.D.N.Y. 2015) (sentencing 53-year-old to time served and supervised release, not 24–30 months' Guideline range, because "[a]t age fifty-three, [he] is unlikely to recidivate"); *see also Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (stating that the Guidelines are an "imperfect measures of how well a sentence protects the public from further crimes of the [older] defendant").  Indeed, the Second Circuit has accepted the Sentencing Commission's conclusion that recidivism decreases with age, and over 90% of first-time offenders over the age of 50 never commit another crime. *United States v. Jenkins*, 854 F.3d 181, 192 (2d Cir. 2017); *see also* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines*, at p. 28 (2004) (stating that for those defendants in Criminal History Category I, the recidivism rate for defendants who are between the ages of 41 and 50 is 6.9 percent whereas the recidivism rate for such defendants who are between the ages of 31 and 40 is greater than 12 percent), available at https://tinyurl.com/USSC-2004.

A custodial sentence or significant further court supervision would not only make it difficult for Mr. Romano to care for his wife, his children and his elderly mother, but it would also hinder his ability to rebuild a business and support his family in the long-term.  *See United States v. Stowe*, 375 F. Supp. 3d 276, 280 (E.D.N.Y. 2019) (concluding that a noncustodial sentence

would better position the defendant to work toward his career goal and provide for his family). Mr. Romano is the "majority caretaker of his mother who is 89 years old who is current[ly] living in an assisted living facility." Ex. 9 (Victor Zazzu Ltr.) (*see also* Ex. 5, John Romano Ltr.; Ex. 1, Lisa Romano Ltr.). Accordingly, significant additional court supervision would contravene the ultimate goals of § 3553(a) and serve no just purpose.

### D.  Mr. Romano has Suffered Financial Penalties

The Guidelines recommend a fine in the range of $500 to $9,500.  Mr. Romano has effectively lost his entire livelihood due to the COVID-19 pandemic.  Almost immediately after New York and New Jersey went into lockdown all of Mr. Romano was forced to surrender all vehicles with bank interest.  Further, as a result of his arrest, he is unable to secure the requisite financing to secure any inventory in the form of used cars or busses.  Finally he suspended his banking license, which he believed would be revoked as a result of his arrest, regardless of the outcome of this case.  Though Mr. Romano doubts he will be able to rebuild his business, he is willing to work hard whether or not he is able to continue to operate Roman Chariot, and will support his family in any lawful way he can.[3]

Unfortunately, due to the reputational destruction caused by the media's coverage of his

---

[3] It is for these reasons that Mr. Romano respectfully requests the Court reduce or eliminate Probation's request that the Court impose the additional sanction of 400 hours of community service.  Community service, is but one "of an array of alternative sanctions" a Court may consider, and is not required by the Guidelines or by statute.  *United States v. Leitch*, 2013 WL 753445, at *12 (E.D.N.Y. Feb. 28, 2013) (sentencing defendant to probation only for a misdemeanor charge).  Mr. Romano has always given back to the community, including coaching youth baseball, soccer and basketball for over twenty years, as well as securing donations and participating in fund raising for youth leagues and school teams.  Further, Mr. Romano and his family have helped with food drives and the donation of toys at Christmas time for the St. Thomas More Parish in addition to donating what they can to Church appeals, the local food pantry and providing a monthly contribution to the Tunnel to Towers Foundation in support of fallen first responders and wounded veterans.  Unfortunately, Mr. Romano cannot resume such involvement effectively if he has to devote significant additional time and resources to performing hundreds of hours community service on a strict timeline.  Community service was neither requested by the government nor part of the terms of Mr. Romano's plea agreement and is not required under the Guidelines.

arrest and indictment and Mr. Romano's inability to travel or actively run his business during the pendency of this case, the value of his business is net negative and he has nearly depleted his life savings to pay for his and his family's expenses.  Mr. Romano supports his wife and his mother, both of whom are reliant on him for financial support.  While he has continued to pay his bills over the past two years, he is nearly out of money, and will likely be completely out of money in the near future.  His hope, of course, is that he is able to devote his time to his business and start to build back his financial livelihood, but that remains to be seen. Thus, given Mr. Romano's financial condition, it is respectfully requested that the Court not impose a fine.  *See* U.S.S.G. § 5E1.2(d)(3) (directing the Court to consider "the burden that the fine places on the defendant and his dependents relative to alternative punishments").

Further, as noted above and in the PSR, a direct result of Mr. Romano's indictment in this case was that a subsequent tax case was brought regarding Mr. Romano's business in New Jersey. PSR Rep. ¶ 116.  That case is on-going and while it is unclear by what means the state plans to pursue this case, Mr. Romano does face potential tax penalties, which would further impede his ability to rebuild his business and pay any fine assessed by this Court.

## CONCLUSION

For the foregoing reasons, Mr. Romano respectfully submits that a sentence of time served is a just and appropriate sentence in this case.

-14-

Dated:  September 1, 2022

Respectfully submitted,

CADWALADER, WICKERSHAM & TAFT LLP

By:   /s/ Todd Blanche

Todd Blanche
Elizabeth R. Moore

200 Liberty Street
New York, NY 10281
Tel.: (212) 504 6000
Fax:  (212) 504-6666
todd.blanche@cwt.com
elizabeth.moore@cwt.com

*Counsel for Defendant*

-14-